# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70023

PAUL DAVID STOREY,

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2015

Lyle W. Cayce
Clerk

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:11-CV-00433

Before PRADO, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:*

Paul Storey was convicted of capital murder and sentenced to death. He seeks a certificate of appealability (COA) from the district court's denial of his petition for writ of habeas corpus. Because reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong, we deny the application.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70023

## BACKGROUND

Storey and a co-defendant were charged with intentionally causing the shooting death of Jonas Cherry while committing or attempting to commit a robbery on October 16, 2006, at Putt-Putt Golf and Games in Hurst, Texas. Storey, who was 22 years old at the time of the murder, had previously worked at the business. A Tarrant County jury found Storey guilty of capital murder and he was sentenced to death. Storey's conviction and sentenced were affirmed on appeal. *Storey v. State*, No. AP-76018, 2010 WL 3901416 (Tex. Crim. App. Oct. 6, 2010).

The Texas Court of Criminal Appeals denied Storey's state application for writ of habeas corpus. *Ex parte Storey*, No. WR-75828-01, 2011 WL 2420707 (Tex. Crim. App. June 15, 2011). He then filed a petition for writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, in federal district court. The district court denied the petition and his request for a COA by Memorandum Opinion and Order on June 9, 2014. *Storey v. Stephens*, No. 4:11-CV-433-O, (N.D. Tex. June 9, 2014). Subsequently, Storey filed this appeal and asks this court to grant a COA.

## STANDARD OF REVIEW

Under AEDPA, a petitioner must obtain a COA as a jurisdictional prerequisite to appeal the denial of habeas relief. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 335-336, 123 S.Ct. 1029, 154 L.Ed.3d 931 (2003). A COA will be granted only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This court conducts a threshold inquiry and issues a COA if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 336, 338. This threshold inquiry does not require full consideration of the factual or legal bases supporting the claims. *Id*. at 336. In death penalty cases, any doubt about whether a COA

2

No. 14-70023

should issue is resolved in the petitioner's favor. *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

A federal court shall not grant a writ of habeas corpus as to any claim that was adjudicated on the merits in state court "unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1), (2).   "A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004) (internal marks omitted).   "An unreasonable application may also occur if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* (internal marks omitted) (alteration in original).   The state court's determination of factual issues is presumed correct unless the petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## DISCUSSION

**I. Whether petitioner's death sentence violates the Sixth Amendment guarantee of effective assistance of counsel because his trial counsel failed to adequately investigate and, therefore, failed to discover important mitigating evidence relevant to the penalty phase of trial.**

Storey asserts that trial counsel failed to investigate significant mitigating factors including petitioner's "extremely low level of intellectual functioning, the scientific data and research supporting his lack of future

3

No. 14-70023

dangerousness, his negative diagnosis for anti-social personality disorder, his severe clinical depression, and his tendency to follow rather than lead, as revealed in standardized personality testing."

Storey takes issue with counsel's use of Dr. J. Randall Price, a forensic neuropsychologist, as a defense expert and offers as support the reports of clinical psychologist Dr. Emily Fallis, who interviewed Storey in 2010 for the state habeas proceeding and in 2012 for the federal proceeding.[1] Specifically, Storey points to: Price's characterization of his overall IQ of 81 as "low average" rather than "borderline intellectual functioning"[2]; Fallis' diagnosis of "possible" Major Depressive Disorder; Fallis' determination that Storey does not have a diagnosis of Antisocial Personality Disorder; Fallis' evaluation that Storey was a low risk of future danger; and Fallis' determination that Storey had a "significantly greater than average 'suggestibility' and is a follower and not a leader" – thus bearing on the fact that the crime was committed with a co-defendant. Storey also offers an affidavit from a juror indicating that, based upon Fallis' report, he would not have voted that Storey was a future danger.[3]

Storey raised this issue in his state petition for writ of habeas corpus. In responding to Storey's petition, the State included affidavits from trial counsel and Price's interview notes, test results, and letter reports. Trial counsel acknowledged various mitigating factors, including Storey's depression,

---

[1] Fallis' 2012 report was not first presented to the state court.

[2] Testing by Fallis resulted in the overall IQ score of 83 in 2012.

[3] This affidavit was stricken by the state court pursuant to Texas Rules of Evidence 606(b) and 402. Rule 606 states that upon inquiry into the validity of a verdict, "a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment." Tex. R. Evid. 606(b). Further, a juror's affidavit or statement about any matter the juror would be precluded from testifying to may not be admitted into evidence for any of these purposes. *Id*.

Rule 402 states: "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." Tex. R. Evid. 402.

obesity, domestic life, and lack of a father figure. Counsel believed, however, that these facts could not be presented to the jury in the best light without an admission of guilt from Storey, which never came. Regardless, these factors and others were introduced through the testimony of the twelve defense witnesses presented during the punishment phase. Counsel also indicated that they decided against further personality testing and testing regarding future dangerousness because Price believed Storey would score fairly high on future dangerousness and likely meet the criteria for Antisocial Personality Disorder. Counsel determined that Price could not provide helpful testimony on punishment because of the possible harm on cross-examination or through the evaluation and testimony of an expert for the State. Counsel indicated that these decisions were made as a matter of trial strategy.

The state habeas court denied relief on this issue. Storey asserts that, in doing so, the state habeas court improperly considered the affidavits of his trial counsel, responding to his state petition and Fallis' report, without providing Storey with prior notice or an opportunity to respond. Storey asserts that there were "controverted, previously unresolved factual issues material" in violation of section 9(a) of article 11.071 of the Texas Code of Criminal Procedure.[4]

---

[4] Section 9(a) states:

> If the convicting court determines that controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, the court shall enter an order, not later than the 20th day after the last date the state answers the application, designating the issues of fact to be resolved and the manner in which the issues shall be resolved. To resolve the issues, the court may require affidavits, depositions, interrogatories, and evidentiary hearings and may use personal recollection.

Tex. Code. Crim. P. art 11.071, § 9(a).

5

No. 14-70023

Ineffective assistance of counsel claims are examined under the clearly established test in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).    Under this test, Storey must show (1) "counsel's representation fell below an objective standard of reasonableness" and (2) prejudice, i.e., a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 688, 694.

Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Id.* at 691.

Storey must demonstrate that it was necessarily unreasonable for the state court to conclude that he did not overcome the strong presumption of counsel's competence and that he failed to undermine confidence in the jury's sentence of death.  *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011).  Storey also must demonstrate that the state court's decision was contrary to or involved an unreasonable application of *Strickland.*  28 U.S.C. § 2254(d).

The district court thoroughly analyzed Storey's various arguments and found the following main points: Storey provided no authority for his contention that the state court could not consider counsel's affidavits attached to the State's answer; Storey's arguments based on Fallis' 2012 affidavit contravene *Pinholster* as the section 2254 review is limited to the record before the state court that adjudicated the issue on the merits, s*ee Pinholster*, 131 S.Ct. at 1398; Storey's claims regarding individual factual findings and conclusions are subsumed by the substantive ineffective assistance of counsel

claim and did not result in an unreasonable state court decision; and because the record supports the conclusion that counsel relied upon a qualified mental health expert and conducted a reasonable investigation into Storey's background, the state court could reasonably determine that counsel had an adequate basis to conclude that additional mental-health testing was not the best strategy. Thus, the district court found that Storey had failed to show both that the state habeas court unreasonably concluded that counsel was not deficient and, assuming counsel had been ineffective, that the state court's conclusion as to the lack of prejudice was unreasonable.

The record indicates that trial counsel made the decisions on the selection of the expert witness and further testing after a thorough investigation of the relevant law and facts. These strategic choices are "virtually unchallengeable." *Strickland*, 466 U.S. 690. Further, as the district court correctly found, "trial counsel was not deficient by not canvassing the field to find a more favorable defense expert." *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000). The record also indicates that relevant evidence regarding the mitigating factors on which Storey relies was admitted during the testimony of other witnesses.

After conducting a threshold inquiry, we conclude that reasonable jurists would not find the district court's assessment of the ineffective assistance of counsel claim debatable or wrong.

**II. Whether petitioner's Fourteenth Amendment rights to equal protection and due process were violated when the State was allowed to use a pretextual peremptory strike on an African American juror that petitioner argues was based on race.**

Storey asserts the State struck an African American venireman on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

No. 14-70023

Under *Batson*, a defendant must establish a prima facie case of purposeful discrimination as follows:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96 (citations omitted). Once the defendant has established a prima facie case of discrimination, the burden shifts to the State to provide a race-neutral reason for each strike. *Id.* at 97. The trial court then makes a determination of whether the defendant has established purposeful discrimination. *Id.* at 98.

During voir dire, the State challenged venireman number 50 for cause under two special issues. Specifically, the State said:

> Special issue number one, that the juror would always require – would increase our burden of proof and require that we prove that the person would murder again before we could impose the death penalty.
> We'd also move that he's challengeable for cause because he would impose a burden of proof on the State in special issue number three to show that the person would again kill before he could impose – answer that question no.

The court denied the motion for cause and the State used a peremptory strike to remove the prospective juror. Defense counsel then asked the court to inquire as to whether the State had race-neutral reasons for the striking the prospective juror, who is African-American like Storey.

8

No. 14-70023

After recounting that number 50 was the third African-American member of the venire who had come before the court in voir dire, with one being seated on the jury and another being disqualified based on her views of the death penalty, the State offered its reasons for the strike. Those reasons included the belief that the venireman would increase the State's burden of proof with regard to special issues numbers one and three by looking for evidence of "the probability that the Defendant would commit a future homicide against an employee of the prison system or someone else at the prison system." The State further offered that "given the case that we have and this venireman's answers, we don't think that we could ever prove to his satisfaction that the answer should result in the death penalty."

The venireman made several statements during voir dire in response to questions regarding the imposition of a sentence of death and future dangerousness. Some of the statements included the following:

- It has a lot to do with – if the person, to me, is going to go out and do all this over again, if – it has a lot to do with, you know, just like I say, his background, everything. Because this all has to play in there whether he's going to continue to do this.
- Well, I can – you know, I can see a life sentence for all that's been done, but as far as if you give him the death penalty, that's – you going to have to – you know, to me, I have to see in my mind that he's going to be worse in the – in the prison system and go out there and hurt the population in the prison system to even go death penalty.
- You – but as far as I'm concerned, I mean, there's a population inside prison, there's a population outside of prison. And the person shows repentance as he's going to prison and I know he's not going to hurt anybody else, well, then, you know, life sentence seems reasonable.
- Now, if he's a real bad character to the point where he's rabid and he's going to hurt even the prison population, you know, there's no point – you already convicted him. All you can do is give him life, okay, sentence.

9

> He gets in there, he decides, I'm already here, might as well kill a few people while I'm here, hey, just go ahead and give him the death penalty and be done with it.

- Okay. If – if there's a reasonable doubt that he's not likely to commit any criminal acts, I – I don't see it.

> But if he's – his behavior is so bad that if he's in the penal system that he's likely to hurt someone else, you know, why are you going to put him in a situation where he's going to go and hurt someone [later clarified as "taking a life"] else in the penal system? You know what I mean?

The State also took issue with specific answers on the venireman's questionnaire, including: his response that "mass murderers" were his best argument in favor of the death penalty; indications of a general mistrust of the system by answers that a "good lawyer" or "enough money" were determinative of outcomes; and that punishment should be the last of the four goals of the criminal justice system. The State also raised a concern that there was evidence the venireman had previously served on a jury in a felony case where the defendant was found not guilty but that he had not disclosed or recalled this information during voir dire. In summary, the State argued that the cumulative effect of all of the answers, rather than a single answer or response, formed the basis for the strike.

The trial court then found that the State had offered race-neutral reasons for the strike and denied the *Batson* motion. The court said that it "didn't think he disqualified himself, but he – he obviously said some things that the State would be very concerned with."

Storey raised this issue on direct appeal and the Court of Criminal Appeals of Texas (CCA) found that the State did not violate *Batson* in exercising the peremptory strike, saying "[t]aking into consideration all relevant circumstances, we find that the trial court's determination that

10

appellant failed to prove discrimination is supported by the record and is not clearly erroneous." *Storey*, 2010 WL 3901416 at *24.

On federal habeas, the district court also analyzed this claim under the AEDPA deferential standard because it had been adjudicated on the merits in state court. 28 U.S.C. § 2254(d)(1), (2). The district court took issue with Storey's unsupported implication that a trial court could never reject a State's argument for cause and then accept that same argument to justify a peremptory strike, as a strike may be made without assigned reason and it is reasonable to conclude that the State was merely trying to avoid using one of its limited strikes if the juror was subject to challenge for cause. After analyzing the facts of the case, the applicable law, and the CCA opinion, the district court concluded that Storey had "not shown that the state court was unreasonable for crediting the prosecutor's race-neutral explanations under *Batson*" and that it could not grant relief under Section 2254(d).

For the same reasons the district court articulated in its thorough and well-reasoned opinion, we believe the statements made by the venireman during voir dire and in his questionnaire establish a reasonable basis for the State's use of the peremptory strike. Thus, the district court's conclusion is not debatable among jurists of reason.

Accordingly, we decline to issue a COA on either Storey's ineffective assistance of counsel or his *Batson* claims.